IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DORIS LEE, Administratrix of the | : | |
| Estate of Herbert M. Lee, Deceased | : | CIVIL ACTION |
| 252 Madison Street | : | |
| Wilkes-Barre, PA 18705 | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | |
| UNITED STATES OF AMERICA | : | |
| d/b/a WILKES-BARRE VETERANS | : | |
| ADMINISTRATION MEDICAL CENTER | : | |
| | : | |
| and | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| d/b/a MANHATTAN VETERANS | : | |
| ADMINISTRATION MEDICAL CENTER | : | |
| | : | |
| and | : | |
| | : | |
| MARTA CHAPLYNSKY-SAMUELSON, M.D. | : | |
| 41922 North Mill Drive | : | |
| Magnolia, TX 77354 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, Doris Lee, Administratrix of the Estate of Herbert M. Lee, deceased, files this

Complaint against the United States of America and Marta Chaplynsky-Samuelson, M.D.

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.     This case sounding in medical malpractice involves claims for personal injury

1

brought against the United States of America under Section (b)(1) of the Federal Tort Claims Act ("FTCA"), 42 U.S.C. § 1346, and Marta Chaplynsky-Samuelson, M.D.  Jurisdiction is based on 28 U.S.C. § 1331 (federal question), 42 U.S.C. §1346, *et seq.* (FTCA litigation), and 28 U.S.C. § 1367 (supplemental jurisdiction).

2.      This matter is brought under the FTCA.

3.      The events, acts and omissions that give rise to Plaintiff's claims and form the subject matter of this action occurred in Wilkes-Barre, Luzerne County, Pennsylvania and in New York City, Manhattan borough, New York County, New York.

4.      Venue is proper in the Middle District of Pennsylvania because a substantial part of the events, acts and omissions that give rise to Plaintiff's claims and form the subject matter of this action occurred in this judicial district.  Further, Plaintiff resides in in the Middle District of Pennsylvania.

## THE PARTIES

5.      Plaintiff, Doris Lee, Administratrix of the Estate of Herbert M. Lee, deceased, is an adult person and citizen of the Commonwealth of Pennsylvania, residing therein at 252 Madison Street, Wilkes-Barre, PA 18705.  *See* Letters of Administration, attached hereto as Exhibit A.

6.      The decedent, Herbert M. Lee, was the husband of Doris Lee and a citizen of the Commonwealth of Pennsylvania, residing therein at 252 Madison Street, Wilkes-Barre, PA 18705.

2

7.      Defendant, United States of America d/b/a Wilkes-Barre Veterans Administration Medical Center ("Wilkes-Barre VAMC") is a state-chartered hospital and health care facility. The Wilkes-Barre VAMC maintains its principal place of business at 1111 East End Boulevard, Wilkes-Barre, PA 18711.  Defendant Wilkes-Barre VAMC is liable under 28 U.S.C. § 2674. The Wilkes-Barre VAMC medical providers include Natalia N. Belikova, M.D., Terrence J. Fagan, M.D., Christopher N. Chapman, M.D., and Brenda Christian, M.D. as well as all other actual, apparent and/or ostensible agents, servants, and/or employees.  As more fully set forth herein, the claim asserted against this Defendant is for the professional negligence of its actual, apparent and/or ostensible agents, servants, and/or employees. A Certificate of Merit for this defendant is attached hereto as Exhibit B.

8.      Defendant, United States of America d/b/a Manhattan Veterans Administration Medical Center ("Manhattan VAMC") is a state-chartered hospital and health care facility.  The Manhattan VAMC maintains its principal place of business at 423 East 23rd Street, New York, NY 10010.  Defendant Manhattan VAMC is liable under 28 U.S.C. § 2674.  The Manhattan VAMC includes Robert M. Donnino, M.D. as well as all other actual, apparent and/or ostensible agents, servants, and/or employees.  As more fully set forth herein, the claim asserted against this Defendant is for the professional negligence of its actual, apparent and/or ostensible agents, servants, and/or employees. A Certificate of Merit for this defendant is attached hereto as Exhibit C.

9.      In doing the acts alleged herein, Natalia N. Belikova, M.D., Terrence J. Fagan, M.D., Christopher N. Chapman, M.D., and Brenda Christian, M.D. were acting as the actual,

apparent and/or ostensible agents, servants, and/or employees of Defendant, United States of America d/b/a Wilkes-Barre VAMC, acting within the course and scope of their agency, master-servant relationship, and/or employment with Defendant, United States of America and Wilkes-Barre VAMC.

10.     In doing the acts alleged herein, Robert M. Donnino, M.D. was acting as the actual, apparent and/or ostensible agent, servant, and/or employee of Defendant, United States of America d/b/a Manhattan VAMC, acting within the course and scope of his agency, master-servant relationship, and/or employment with Defendant, United States of America and Manhattan VAMC.

11.     All physicians, radiologists, specialists, fellows, residents, nurses, technicians, administrators, and/or other professional and non-professional personnel of Defendant, United States of America and specifically Wilkes-Barre VAMC, including, but not limited to, Natalia N. Belikova, M.D., Terrence J. Fagan, M.D., Christopher N. Chapman, M.D., and Brenda Christian, M.D. and the Department of Radiology, who were responsible for monitoring, treating, caring for, and/or reviewing the imaging studies of the decedent, Herbert M. Lee, from May 2007 through August 2019, were acting as duly authorized actual, apparent and/or ostensible agents, servants, and/or employees of Defendant, United States of America and Wilkes-Barre VAMC, and acted within the scope of their employment, master-servant relationship, and/or actual, apparent and/or ostensible agency with Defendant, United States of America and Wilkes-Barre VAMC.  The identity of any other individuals involved in Mr. Lee's care cannot be ascertained from the medical records, and this information is in the exclusive custody and control of the

4

Defendants and will be the subject of discovery.

12.     All physicians, radiologists, specialists, fellows, residents, nurses, technicians, administrators, and/or other professional and non-professional personnel of Defendant, United States of America and specifically Manhattan VAMC, including, but not limited to, Robert M. Donnino, M.D. and the Department of Radiology, who were responsible for monitoring, treating, caring for, and/or reviewing the imaging studies of the decedent, Herbert M. Lee, from March 2018 through August 2019, were acting as duly authorized actual, apparent and/or ostensible agents, servants, and/or employees of Defendant, United States of America and Manhattan VAMC, and acted within the scope of their employment, master-servant relationship, and/or actual, apparent and/or ostensible agency with Defendant, United States of America and Manhattan VAMC.  The identity of any other individuals involved in Mr. Lee's care cannot be ascertained from the medical records, and this information is in the exclusive custody and control of the Defendants and will be the subject of discovery.

13.     Defendant, Marta Chaplynsky-Samuelson, M.D. ("Dr. Samuelson") at all times material hereto was a physician specializing in radiology and was duly licensed to practice medicine in the Commonwealth of Pennsylvania with an office, medical practice and/or a place of business located at the Wilkes-Barre VAMC, 1111 East End Boulevard, Wilkes-Barre, PA 18711.  A Certificate of Merit for this defendant is attached hereto as Exhibit D.

14.     Upon information and belief, Dr. Samuelson was not an employee of the Department of Veterans Affairs at the time she monitored, treated, cared for, and/or reviewed the imaging studies of the decedent, Herbert M. Lee.  The identity of Dr. Samuelson's employer

cannot be ascertained from the medical records, and this information is in the exclusive custody and control of the Defendants and will be the subject of discovery.

15.    At all times relevant hereto, Herbert M. Lee was under the medical care, treatment, and attendance of all Defendants directly or through their actual, apparent and/or ostensible agents, servants, and/or employees, including the actual, apparent and/or ostensible agents, servants, and/or employees identified above, and under their direct control or right to control.

## GENERAL ALLEGATIONS

16.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

17.    Plaintiff's decedent, Herbert M. Lee, was born on September 12, 1944.

18.    Herbert M. Lee was a veteran with a prior medical history including coronary artery disease, ischemic cardiomyopathy, abdominal aortic aneurysm, and thoracic aneurysm.

19.    On May 23, 2007, Herbert M. Lee underwent a CT Thorax/Chest at Wilkes-Barre VAMC for follow-up of his thoracic aneurysm, which was verified that same day by Dr. Krapiva, who found, in relevant part, "Lung windows reveal small subpleural soft tissue nodule of pleural based mass with spiculated borders within the superior segment of the left lower lobe approximately 5 mm in longest dimension best visualized on image 60," with an Impression including "spiculated pulmonary nodule in the left lower lobe worrisome for malignancy."

20.    The May 23, 2007 Chest CT was reviewed on May 24, 2007 by Joseph Carbo, M.S., P.A.-C., who copied the May 23, 2007 Chest CT report in a "Surgery General Note" and

further noted "suspicious findings in lung views" and stated, "Will forward this to patient's PCP, Dr. Belikova for appropriate workup on 05/29/07."

21.     Receipt of the May 24, 2007 "Surgery General Note" including the May 23, 2007 Chest CT report copied therein was acknowledged by Mohammad A. Shaikh, M.D. on May 24, 2007.

22.     Receipt of the May 24, 2007 "Surgery General Note" including the May 23, 2007 Chest CT report copied therein was acknowledged by Natalia N. Belikova, M.D. on May 29, 2007.

23.     In a May 24, 2007 "Radiology Note," Michael J. De Sando states, "Abnormal CT Chest 5-23-07.  Dr. Shaikh please take note."

24.     Receipt of the May 24, 2007 "Radiology Note" was acknowledged by Joseph M. Carbo, M.S., P.A.-C., Natalia N. Belikova, M.D., and Charmaine Zoller, R.N. on May 24, 2007.

25.     Receipt of the May 24, 2007 "Radiology Note" was acknowledged by Mohammad A. Shaikh, M.D. on May 29, 2007.

26.     In a May 29, 2007 "Primary Care Note," Natalia Belikova, M.D. lists Mr. Lee's Active Problems as "f/u the abnormal CT of the chest" and states, in relevant part, "Pt had f/u CT of the chest as a part of his f/u with vascular surgeon and found spiculated pulmonary nodule in the left lower lobe worrisome for malignancy," with an Assessment including, "Coin lesion of the lung as per CT of the chest on 5/23/07 PET scan, PFT, pulmonary consult" and concluding with "stable on d/c, f/u in 3 months."

27.     In a July 3, 2007 "Consultation Report," Terrence J. Fagan, M.D. states, in

relevant part, "Mr [sic] Lee is 62 has remote smoking hx (20 yrs ago) and has a 7 mm LLL nodule on cut 60/61 of the recent CT chest. This was read by outside radkiology [sic], no comparison to prior films. His PET scan does not really show a positive, and the density is too small to expect it to be abnormal. I looked at all 5 CT chest he has had for f/u of aneurysm. These include 5/07, 1/07,[sic]5/06, 3/05, and 12/03. The 2003 is not technically equal to the other 3, hard to tell if anything there. The other 3 clearly have the same nodule adjacent to the descending aorta. I see no size change, not did Dr Zabel [sic], and this encompasses a 2 year spread … Imp: I do not feel the nodule is supicious [sic] for CA. It is not even mentioned on his prior CT's.  Plan: Will ask PCP to follow in 1 yr, and ask Dr Zabel to amend the reports I will not follow myself."

28.     Receipt of the July 3, 2007 "Consultation Report" was acknowledged by Natalia N. Belikova, M.D. that same day.

29.     Receipt of the July 3, 2007 "Consultation Report" was acknowledged by Arleen S. Zabell, M.D. that same day.

30.     In a September 10, 2007 "Primary Care Note," Natalia Belikova, M.D. includes an Assessment stating, in relevant part, "Coin lesion of the lung as per CT of the chest on 5/23/07 PET scan not conclusive, PFT reviewed, pulmonary consult done f/u with CT of the chest in 1 year" and concluding with "stable on d/c, f/u in 6 months."

31.     In a December 4, 2007 "Primary Care Note," Natalia Belikova, M.D. again includes an Assessment stating, in relevant part, "Coin lesion of the lung as per CT of the chest on 5/23/07 PET scan not conclusive, PFT reviewed, pulmonary consult done f/u with CT of the

chest in 1 year" and concluding with "stable on d/c,".

32.     No follow up chest CT exam was done the following year, or for numerous years thereafter.

33.     On May 12, 2012, Herbert M. Lee underwent a CT Chest/Thorax at Wilkes-Barre VAMC for left side chest wall cellulitis and to rule out an abscess after placement of a pacer four weeks prior, which was verified that same day by Dr. Samuelson, who noted a comparison study from May 23, 2007 and found, in relevant part, "Small stable nodule redemonstrated in left lung region," with an Impression including "Stable CT chest" and a Primary Diagnostic Code of "Major abnormality, no attn. needed."

34.     On September 9, 2014, Herbert M. Lee underwent a CT Chest/Thorax at Wilkes-Barre VAMC for a history of a fall, which was interpreted/verified that same day by Christopher N. Chapman, M.D., who noted no prior comparison study and found, in relevant part, "Small hazy focus left upper lobe inferiorly may reflect small parenchymal contusion," with an Impression including "Chronic pleural-parenchymal changes. … Nonspecific minor changes upper left lobe may reflect small contusion" and a Primary Diagnostic Code of "Major abnormality, no attn. needed."

35.     On May 16, 2017, Herbert M. Lee underwent a CT Chest/Thorax at Wilkes-Barre VAMC requested by Natalia N. Belikova, M.D. for a history of DOE, which was verified that same day by Brenda Christian, M.D., who noted a comparison study from September 9, 2014 and an Impression including "No acute process seen.  Bilateral stable micronodules consistent with granulomas which needs no further follow-up…" and a Primary Diagnostic Code of "No

alert required."

36.     On March 27, 2018 Herbert M. Lee underwent a CT Heart (Cardiac CT) at Manhattan-VAMC during pre-op for a left atrial appendage closure, which was verified by Robert M. Donnino, M.D. on March 28, 2018, who found, in relevant part, "There is a 1 cm pulmonary nodule in the left lower lobe (image 211)" with an Impression including "1 cm pulmonary nodule.  Recommend clinical follow up and repeat CT in 3 months, PET or consideration for biopsy."

37.     On June 28, 2018, Herbert M. Lee underwent a CT Chest/Thorax at Wilkes-Barre VAMC requested by Natalia N. Belikova, M.D. for a history of a "1 cm pulmonary nodule in CT chest [sic] done in Manhattan," which was verified that same day by Brenda Christian, M.D., who noted a comparison study from May 16, 2017 and an Impression including, "Interval development of a left lower lobe nodule measuring 1.1 x 1.1 cm.  There is a juxtapleural medial dense consolidation towards the left lower lobe that has increased in size since prior study. Consider PET/CT" and a Primary Diagnostic Code of "Possible malignancy."

38.     On July 11, 2018, Herbert M. Lee underwent PET/CT Tumor Imaging at Wilkes-Barre VAMC requested by Natalia N. Belikova, M.D. for a history of a lung nodule, which was verified that same day by Brenda Christian, M.D., who noted comparison studies from June 28, 2018, May 16, 2017, and September 9, 2014, and found, in relevant part, "There is a density adjacent and inseparable to the descending aorta at the left lower lobe that in 2014 was measuring 22.2 x 13.1 mm, and 2017 was measuring 20.6 x 11.1 mm, and in 6/28/2018 was measuring 40.8 x 21.3 mm (has minimal new air bronchograms within it).  In the current

examination this area has a hypermetabolic activity of 12 SUV.  Consider do CT scan of the chest with intravenous contrast to better evaluate this area.  There is an adjacent lung nodule at the left lower lobe (new since 5/16/2017) measuring 12.9 x 12.9 mm showing an increased metabolic activity of 5.2 SUV," with an Impression including, "Hypermetabolic areas within the left lower lobe.  Consider pulmonary consult for tissue sampling" and a Primary Diagnostic Code of "Possible malignancy."

39.     Herbert M. Lee was ultimately diagnosed with lung cancer, which progressed to Stage IV.

40.     From July 2018 to June 2019, Herbert M. Lee underwent numerous additional radiologic studies and procedures, including multiple chest x-rays and CT exams, a CT-guided lung biopsy on July 25, 2018, head CT exams on November 14, 2018 and January 17, 2019, and PET/CT tumor imaging on December 17, 2018 and June 5, 2019.

41.     Herbert M. Lee underwent chemotherapy and radiation therapy in an effort to treat his cancer which progressed to Stage IV.

42.     Herbert M. Lee was placed on palliative care, as a result of his late stage cancer.

43.     Herbert M. Lee died on August 9, 2019 at the age of 74 due to cancer.

44.     The negligence of all Defendants, directly and/or by and through their agents, servants, and/or employees, as set forth with particularity in the counts below, directly and proximately caused Plaintiff's decedent, Herbert M. Lee, to suffer the following injuries:

     a.     Untimely death;

     b.     Metastatic lung cancer;

c.      Metastases;

d.      Severe pain and suffering;

e.      Weakness;

f.      Fatigue;

g.      Weight loss;

h.      Difficulty with eating;

i.      Mental status changes;

j.      Confusion;

k.      Dehydration;

l.      Difficulty breathing;

m.      Depression;

n.      Shortness of breath;

o.      Radiation esophagitis;

p.      Neutropenia;

q.      Pancytopenia;

r.      Thrombocytopenia;

s.      Lung biopsies;

t.      Chemotherapy treatment and sequalae of treatment;

u.      Radiation therapy treatment and sequalae of treatment;

v.      Scarring;

w.      Disfigurement;

x.      Nausea;

y.      Vomiting;

z.      Embarrassment;

aa.     Humiliation;

bb.     Severe fear and anxiety;

cc.     Severe emotional distress;

dd.     Severe mental anguish;

ee.     Hospital, medical, burial, funeral, and estate administration expenses;

ff.     Loss of enjoyment of life and life's pleasures;

gg.     Loss of past and future earnings; and

hh.     All damages recoverable under the Pennsylvania Wrongful Death and
        Survival Acts.

45.     The grievous injuries and economic and non-economic damages and losses suffered by Plaintiff's decedent were caused exclusively by the negligence of all Defendants, directly and/or by and through their agents, servants, and/or employees, individually, jointly, and/or severally, and was not caused or contributed to in any way by any act or failure to act on the part of Plaintiff's decedent.

46.     Herbert M. Lee died intestate.  Pursuant to 42 Pa C.S.A. § 8301 and 20 Pa. C.S.A. § 2101, *et seq*. and Pa. R. Civ. P. 2204, the names of Herbert M. Lee's beneficiaries, their relationship to the decedent, and their last known residence addresses are as follows:

- Doris Lee (wife), 252 Madison Street, Wilkes-Barre, PA 18705;

13

- Michael Lee (son), 14 Classon Avenue, Mastic, NY 11950;

- Keith Lee (son), 6 Claremont Drive, Mastic Beach, NY 11951;

- Scott Lee (son), 72 Pine Street, Pittston, PA 18640;

- Todd R. Lee (son), 5 Garden Road, Sound Beach, NY 11789;

- Tamra Robinson (daughter), 6 Glendale Avenue, Medford, NY 11763;

- Michelle Lee (daughter), 252 Madison Street, Wilkes-Barre, PA 18705; and

- Dawn Lee (daughter), 9 Sively Street, Ashley, PA 18706.

47.     This action has been commenced within two (2) years after Plaintiff's decedent's death.

48.     Prior to Plaintiff's decedent's death, no action was brought to recover for the conduct which caused the decedent's pain, suffering and death.  No action for the wrongful death of Herbert M. Lee was commenced against the Defendants herein, nor has any survival action been commenced.

49.     As a direct and proximate result of the actions, omissions, and negligence of all Defendants, directly and/or by and through their agents, servants, and/or employees, in the time leading up to his death, Plaintiff's decedent suffered severe and catastrophic injuries and conscious pain and suffering.

50.     Plaintiff seeks all damages available pursuant to the FTCA.

51.     Plaintiff seeks all damages available pursuant to the Pennsylvania Wrongful Death and Survival Acts, including, but not limited to, the profound emotional grief and distress of the decedent's beneficiaries pursuant to Rettger v. UPMC Shadyside, 991 A.2d 915 (Pa.

14

Super. 2010).

    52.    Plaintiff seeks all damages available under Pennsylvania law.

**COUNT I – NEGLIGENCE**
**PLAINTIFF v. DEFENDANT, UNITED STATES OF AMERICA**
**d/b/a WILKES-BARRE VETERANS ADMINISTRATION**
**MEDICAL CENTER/ NATALIA N. BELIKOVA, M.D., TERRENCE J. FAGAN, M.D.,**
**CHRISTOPHER N. CHAPMAN, M.D., and BRENDA CHRISTIAN, M.D.**

    53.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

    54.    The negligence of Defendant, United States of America d/b/a Wilkes-Barre Veterans Administration Medical Center/ Natalia N. Belikova, M.D., Terrence J. Fagan, M.D., Christopher N. Chapman, M.D., and Brenda Christian, M.D., by and through its actual, apparent and/or ostensible agents, servants, and/or employees, including specifically Natalia N. Belikova, M.D., Terrence J. Fagan, M.D., Christopher N. Chapman, M.D., and Brenda Christian, M.D., consisted of one or more of the following:

    a)  failing to ensure the diagnosis of Herbert M. Lee's lung cancer following the May 23, 2007 Chest CT;

    b)  failing to properly address and treat the spiculated pulmonary nodule in the left lower lobe worrisome for malignancy as found during the May 23, 2007 Chest CT;

    c)  failing to recommend follow-up care and/or order further imaging studies, including, but not limited to, close follow-up chest CT, PET/CT, or tissue sampling, in light of suspicious findings evident on the May 23, 2007 Chest CT;

    d)  failing to recommend follow-up care and/or order further imaging studies, including, but not limited to, close follow-up chest CT, PET/CT, or tissue sampling, to allow for appropriate treatment to follow in light of suspicious findings evident on the May 23, 2007 Chest CT;

15

e) failing to recommend consultation with and referral to specialists in light of suspicious findings evident on the May 23, 2007 Chest CT;

f) failing to properly recognize, interpret, read, diagnose, describe, report, address, and treat the suspicious findings evident on the May 23, 2007 Chest CT during the July 3, 2007 pulmonary consultation;

g) improperly ruling out cancer;

h) failing to properly read and interpret the September 9, 2014 Chest CT, including, but not limited to, failing to identify the left lower lobe nodule at issue;

i) failing to properly diagnose, describe, and report the suspicious findings evident on the September 9, 2014 Chest CT, including, but not limited to, the left lower lobe nodule at issue;

j) failing to communicate the suspicious findings evident on the September 9, 2014 Chest CT to the requesting physician;

k) failing to document communication of the suspicious findings evident on the September 9, 2014 Chest CT to the requesting physician;

l) failing to ensure the diagnosis of Herbert M. Lee's lung cancer following the September 9, 2014 Chest CT;

m) failing during the September 9, 2014 CT Chest to identify the pulmonary nodule in the left lower lobe as found during the May 23, 2007 Chest CT;

n) failing to compare the September 9, 2014 CT Chest to the May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

o) failing to document comparison of the September 9, 2014 CT Chest to the May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

p) failing to properly compare the September 9, 2014 CT Chest to the May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

q) failing to properly address and treat the pulmonary nodule in the left lower lobe as evident on the September 9, 2014 CT Chest;

r)  failing to properly read and interpret the May 16, 2017 Chest CT, including, but not limited to, failing to identify the left lower lobe mass at issue;

s)  failing to properly diagnose, describe, and report the suspicious findings evident on the May 16, 2017 Chest CT, including, but not limited to, the left lower lobe mass at issue;

t)  failing to communicate the suspicious findings evident on the May 16, 2017 Chest CT to the requesting physician;

u)  failing to document communication of the suspicious findings evident on the May 16, 2017 Chest CT to the requesting physician;

v)  failing to properly compare the May 16, 2017 CT Chest to the September 9, 2014 CT Chest;

w) failing during the May 16, 2017 CT Chest to identify the presence of an enlarged pulmonary mass in the left lower lobe as compared to the September 9, 2014 Chest CT;

x)  failing to ensure the diagnosis of Herbert M. Lee's lung cancer following the May 16, 2017 Chest CT;

y)  failing during the May 16, 2017 CT Chest to identify the pulmonary mass in the left lower lobe;

z)  failing to compare the May 16, 2017 CT Chest to the May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

aa) failing to document comparison of the May 16, 2017 CT Chest to the May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

bb) failing to properly compare the May 16, 2017 CT Chest to the September 9, 2014 CT Chest, May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

cc) failing to properly address and treat the pulmonary mass in the left lower lobe as evident on the May 16, 2017 CT Chest;

dd) failing to properly read and interpret the June 28, 2018 Chest CT, including, but not limited to, failing to identify the left lower lobe mass at issue;

ee) failing to properly diagnose, describe, and report the suspicious findings evident on the June 28, 2018 Chest CT, including, but not limited to, the left lower lobe mass at issue;

ff) failing to communicate the suspicious findings evident on the June 28, 2018 Chest CT to the requesting physician;

gg) failing to document communication of the suspicious findings evident on the June 28, 2018 Chest CT to the requesting physician;

hh) failing to properly compare the June 28, 2018 Chest CT to the May 16, 2017 Chest CT;

ii) failing during the June 28, 2018 CT Chest to identify the presence of an enlarged pulmonary mass in the left lower lobe as compared to the May 16, 2017 Chest CT;

jj) failing to ensure the diagnosis of Herbert M. Lee's lung cancer following the June 28, 2018 Chest CT;

kk) failing during the June 28, 2018 CT Chest to identify the pulmonary mass in the left lower lobe;

ll) failing to compare the June 28, 2018 CT Chest to the March 27, 2018 Cardiac CT, September 9, 2014 CT Chest, May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

mm)   failing to document comparison of the June 28, 2018 CT Chest to the March 27, 2018 Cardiac CT, September 9, 2014 CT Chest, May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

nn) failing to properly compare the June 28, 2018 CT Chest to the March 27, 2018 Cardiac CT, September 9, 2014 CT Chest, May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

oo) failing to properly address and treat the pulmonary mass in the left lower lobe as evident on the June 28, 2018 CT Chest and May 16, 2017 CT Chest;

pp) failing to properly read and interpret the July 11, 2018 PET/CT;

qq) failing to properly diagnose, describe, and report the suspicious findings evident on the July 11, 2018 PET/CT;

18

rr) failing to communicate the suspicious findings evident on the July 11, 2018 PET/CT to the requesting physician;

ss) failing to document communication of the suspicious findings evident on the July 11, 2018 PET/CT to the requesting physician;

tt) failing to properly compare the July 11, 2018 PET/CT to the September 9, 2014 CT Chest, May 16, 2017 CT Chest, and June 28, 2018 CT Chest;

uu) failing during the July 11, 2018 PET/CT to identify the presence of a lung cancer or neoplasm;

vv) failing to ensure the diagnosis of Herbert M. Lee's lung cancer following the July 11, 2018 PET/CT;

ww) failing to compare the July 11, 2018 PET/CT to the March 27, 2018 Cardiac CT, May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

xx) failing to document comparison of the July 11, 2018 PET/CT to the March 27, 2018 Cardiac CT, May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

yy) failing to properly compare the July 11, 2018 PET/CT to the March 27, 2018 Cardiac CT, September 9, 2014 CT Chest, May 12, 2012 CT Chest or the May 23, 2007 CT Chest;

zz) failing to properly address and treat the pulmonary mass in the left lower lobe as evident on the July 11, 2018 PET/CT;

aaa) failing to recommend follow-up care and/or order further imaging studies, including, but not limited to, referral to a thoracic oncology program, further evaluation with tissue sampling/biopsy of the left lower lobe, or PET/CT, in light of suspicious findings evident on the May 23, 2007 Chest CT, May 12, 2012 Chest CT, September 9, 2014 Chest CT, May 16, 2017 CT Chest, March 27, 2018 Cardiac CT, June 28, 2018 CT Chest, and July 11, 2018 PET/CT;

bbb) failing to recommend follow-up care and/or order further imaging studies, including, but not limited to, referral to a thoracic oncology program, further evaluation with tissue sampling/biopsy of the left lower lobe, or PET/CT, to allow for appropriate treatment to follow in light of suspicious findings evident on the May 23, 2007 Chest CT, May 12, 2012 Chest CT, September 9,

19

2014 Chest CT, May 16, 2017 CT Chest, March 27, 2018 Cardiac CT, June 28, 2018 CT Chest, and July 11, 2018 PET/CT;

ccc)   failing to recommend consultation with and referral to specialists in light of suspicious findings evident on the May 23, 2007 Chest CT, May 12, 2012 Chest CT, September 9, 2014 Chest CT, May 16, 2017 CT Chest, March 27, 2018 Cardiac CT, June 28, 2018 CT Chest, and July 11, 2018 PET/CT;

ddd)   failing to timely recognize, diagnose and treat Herbert M. Lee's lung cancer;

eee)   failing to make proper recommendations for follow-up care and treatment in light of the suspicious findings evident on the May 23, 2007 Chest CT, May 12, 2012 Chest CT, September 9, 2014 Chest CT, May 16, 2017 CT Chest, March 27, 2018 Cardiac CT, June 28, 2018 CT Chest, and July 11, 2018 PET/CT;

fff) failing to follow-up on results of requested imaging studies, including, but not limited to, May 16, 2017 CT Chest, June 28, 2018 CT Chest, and July 11, 2018 PET/CT;

ggg)   failing to order additional imaging studies and/or views;

hhh)    failing to take necessary steps to prevent and/or reduce the risk of growth of the cancerous condition in Herbert M. Lee's left lung;

iii) failing to take all necessary steps and measures which a reasonably prudent nurse would take to promptly diagnose and treat Herbert M. Lee's lung cancer;

jjj) failing to take all necessary steps and measures which a reasonably prudent physician's assistant would take to promptly diagnose and treat Herbert M. Lee's lung cancer;

kkk)   failing to take all necessary steps and measures which a reasonably prudent thoracic/vascular surgeon would take to promptly diagnose and treat Herbert M. Lee's lung cancer;

lll) failing to take all necessary steps and measures which a reasonably prudent pulmonologist would take to promptly diagnose and treat Herbert M. Lee's lung cancer;

20

mmm) failing to take all necessary steps and measures which a reasonably prudent primary care physician would take to promptly diagnose and treat Herbert M. Lee's lung cancer;

nnn)  failing to take all necessary steps and measures which a reasonably prudent radiologist would take to promptly diagnose and treat Herbert M. Lee's lung cancer; and

ooo)  failing to adhere to all hospital and/or VA practices, policies and/or procedures to ensure appropriate follow-up care and treatment for a patient with radiologic findings requiring follow-up imaging and/or further workup.

55.     The negligence of the Defendant, by and through its aforementioned agents, servants, and/or employees as set forth above, directly and proximately caused the injuries and damages suffered by Plaintiff's decedent, Herbert M. Lee.

56.     The injuries to Plaintiff's decedent were caused solely by the negligence of the Defendant as set forth above and were not caused or contributed thereto by any negligence on the part of the decedent.

WHEREFORE, Plaintiff respectfully demands damages against the Defendant, individually, jointly, and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) and in excess of local arbitration limits, exclusive of interest, prejudgment interest and costs.

**COUNT II – NEGLIGENCE**
**PLAINTIFF v. DEFENDANT, UNITED STATES OF AMERICA**
**d/b/a MANHATTAN VETERANS ADMINISTRATION**
**MEDICAL CENTER/ROBERT M. DONNINO, M.D.**

57.     The preceding paragraphs of this Complaint are incorporated as though fully set

forth herein.

58.     The negligence of Defendant, United States of America d/b/a Manhattan Veterans

Administration Medical Center/Robert M. Donnino, M.D., by and through its actual, apparent

and/or ostensible agents, servants, and/or employees, including specifically Robert M. Donnino,

M.D., consisted of one or more of the following:

   a)  failing to properly read and interpret the March 27, 2018 Heart/Cardiac CT;

   b)  failing to properly diagnose, describe, and report the suspicious findings
       evident on the March 27, 2018 Cardiac CT;

   c)  failing to communicate the suspicious findings evident on the March 27, 2018
       Cardiac CT to the requesting physician;

   d)  failing to document communication of the suspicious findings evident on the
       March 27, 2018 Cardiac CT to the requesting physician;

   e)  failing to properly compare the March 27, 2018 Cardiac CT to the May 16,
       2017 CT Chest;

   f)  failing during the March 27, 2018 Cardiac CT to identify the presence of an
       enlarging pulmonary mass in the left lower lobe;

   g)  failing to ensure the diagnosis of Herbert M. Lee's lung cancer following the
       March 27, 2018 Cardiac CT;

   h)  failing to compare the March 27, 2018 Cardiac CT to the September 4, 2019
       CT Chest, May 12, 2012 CT Chest, or May 23, 2007 CT Chest;

i)   failing to document comparison of the March 27, 2018 Cardiac CT to the September 4, 2019 CT Chest, May 12, 2012 CT Chest, or May 23, 2007 CT Chest;

j)   failing to properly compare the March 27, 2018 Cardiac CT to the September 4, 2019 CT Chest, May 12, 2012 CT Chest, or May 23, 2007 CT Chest;

k)   failing to properly address and treat the pulmonary mass in the left lower lobe as evident on the March 27, 2018 Cardiac CT;

l)   failing to recommend proper follow-up care;

m)   failing to recommend proper follow-up care to allow for appropriate treatment to follow in light of suspicious findings evident on the May 23, 2007 Chest CT, May 12, 2012 Chest CT, September 9, 2014 Chest CT, May 16, 2017 CT Chest, and March 27, 2018 Cardiac CT;

n)   failing to consult with a radiologist;

o)   failing to recommend consultation with and referral to specialists in light of suspicious findings evident on the May 23, 2007 Chest CT, May 12, 2012 Chest CT, September 9, 2014 Chest CT, May 16, 2017 CT Chest, and March 27, 2018 Cardiac CT;

p)   failing to timely recognize, diagnose and treat Herbert M. Lee's lung cancer;

q)   failing to make proper recommendations for follow-up care and treatment in light of the suspicious findings evident on the May 23, 2007 Chest CT, May 12, 2012 Chest CT, September 9, 2014 Chest CT, May 16, 2017 CT Chest, and March 27, 2018 Cardiac CT;

r)   failing to order additional imaging studies and/or views;

s)   failing to take necessary steps to prevent and/or reduce the risk of growth of the cancerous condition in Herbert M. Lee's left lung;

t)   failing to take all necessary steps and measures which a reasonably prudent cardiologist would take to promptly diagnose and treat Herbert M. Lee's lung cancer; and

u) failing to adhere to all hospital and/or VA practices, policies and/or procedures to ensure appropriate follow-up care and treatment for a patient with radiologic findings requiring follow-up imaging and/or further workup.

59.     The negligence of the Defendant, by and through its aforementioned agents, servants, and/or employees as set forth above, directly and proximately caused the injuries and damages suffered by Plaintiff's decedent, Herbert M. Lee.

60.     The injuries to Plaintiff's decedent were caused solely by the negligence of the Defendant as set forth above and were not caused or contributed thereto by any negligence on the part of the decedent.

WHEREFORE, Plaintiff respectfully demands damages against the Defendant, individually, jointly, and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) and in excess of local arbitration limits, exclusive of interest, prejudgment interest and costs.

## COUNT III – NEGLIGENCE
## PLAINTIFF v. DEFENDANT, MARTA CHAPLYNSKY-SAMUELSON, M.D.

61.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

62.     The negligence of Defendant, Marta Chaplynsky-Samuelson, M.D. consisted of one or more of the following:

a) failing to properly read and interpret the May 12, 2012 Chest CT;

b) failing to properly compare the May 12, 2012 Chest CT to the May 23, 2007 Chest CT;

c) failing to properly diagnose, describe, and report the suspicious findings evident on the May 12, 2012 Chest CT;

24

d) failing to communicate the suspicious findings evident on the May 12, 2012 Chest CT to the requesting physician;

e) failing to document communication of the suspicious findings evident on the May 12, 2012 Chest CT to the requesting physician;

f) failing to ensure the diagnosis of Herbert M. Lee's lung cancer following the May 12, 2012 Chest CT;

g) failing during the May 12, 2012 CT Chest to identify the presence of an enlarged pulmonary nodule in the left lower lobe as compared to the May 23, 2007 Chest CT;

h) failing to properly address and treat the pulmonary nodule in the left lower lobe as evident on the May 23, 2007 Chest CT and May 12, 2012 Chest CT;

i) failing to recommend follow-up care and/or order further imaging studies in light of suspicious findings evident on the May 23, 2007 Chest CT and May 12, 2012 Chest CT;

j) failing to recommend follow-up care and/or order further imaging studies in light of the concern for malignancy noted in the May 23, 2007 Chest CT report;

k) failing to recommend follow-up care and/or order further imaging studies to allow for appropriate treatment to follow in light of suspicious findings evident on the May 23, 2007 Chest CT and May 12, 2012 Chest CT;

l) failing to recommend follow-up care and/or order further imaging studies to allow for appropriate treatment to follow in light of the concern for malignancy noted in the May 23, 2007 Chest CT report;

m) failing to recommend consultation with and referral to specialists in light of suspicious findings evident on the May 23, 2007 Chest CT and May 12, 2012 Chest CT;

n) failing to recommend consultation with and referral to specialists in light of the concern for malignancy noted in the May 23, 2007 Chest CT report;

o)  failing to timely recognize, diagnose and treat Herbert M. Lee's lung cancer;

p)  failing to make proper recommendations for follow-up care and treatment in light of the suspicious findings evident on the May 23, 2007 Chest CT and May 12, 2012 Chest CT;

q)  failing to make proper recommendations for follow-up care and treatment in light of the concern for malignancy noted on the May 23, 2007 Chest CT report;

r)  failing to order additional imaging studies and/or views;

s)   failing to take necessary steps to prevent and/or reduce the risk of growth of the cancerous condition in Herbert M. Lee's left lung;

t)  failing to take all necessary steps and measures which a reasonably prudent radiologist would take to promptly diagnose and treat Herbert M. Lee's lung cancer; and

u)  failing to adhere to all hospital and/or VA practices, policies and/or procedures to ensure appropriate follow-up care and treatment for a patient with radiologic findings requiring follow-up imaging and/or further workup.

63.    The Defendant knew or had reason to know of facts that created a high degree of risk of physical harm to another, and deliberately proceeded to act, or failed to act, in conscious disregard of or indifference to that risk, as evidenced by: Dr. Samuelson's failure to communicate the highly suspicious left lower lobe nodule evident on the May 23, 2007 Chest CT and May 12, 2012 Chest CT to the requesting physician or recommend follow-up care, order further imaging studies, or recommend consultation with and referral to specialists in light of the concern for malignancy noted on the May 23, 2007 Chest CT report.

64.    The negligence of the Defendant directly and proximately caused the injuries and damages suffered by Plaintiff's decedent, Herbert M. Lee.

26

65.     The injuries to Plaintiff's decedent were caused solely by the negligence of the Defendant as set forth above and were not caused or contributed thereto by any negligence on the part of the decedent.

WHEREFORE, Plaintiff respectfully demands damages against the Defendant, individually, jointly, and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) and in excess of local arbitration limits, exclusive of interest, prejudgment interest and costs.

### COUNT IV – WRONGFUL DEATH
### PLAINTIFF v. ALL DEFENDANTS

66.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

67.     Plaintiff, Doris Lee, as Administratrix of the Estate of Herbert M. Lee, deceased, bring this action on behalf of those entitled by law to recover for his wrongful death under and by virtue of the Wrongful Death Act of the Commonwealth of Pennsylvania, 42 Pa. C.S.A. § 8301.  Plaintiff asserts entitlement to all claims and damages as set forth in the Wrongful Death Act and supporting case law, including, but not limited to, the pecuniary loss suffered by the decedent's beneficiaries by reason of his death.

68.     Plaintiff claims damages on behalf of the decedent's beneficiaries resulting from the deprivation of comfort, aid, assistance, and society and the profound emotional and psychological loss due to the death of Herbert M. Lee.

69.     No actions for the damages claimed were brought by or on behalf of Herbert M.

Lee during his lifetime.

WHEREFORE, Plaintiff respectfully demands damages against all Defendants, individually, jointly, and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) and in excess of local arbitration limits, exclusive of interest, prejudgment interest and costs.

### COUNT V – SURVIVAL ACTION
### PLAINTIFF v. ALL DEFENDANTS

70.     The preceding paragraphs of this Complaint are incorporated by reference as though fully set forth herein.

71.     Plaintiff, Doris Lee, as Administratrix of the Estate of Herbert M. Lee, deceased, bring this action under and by virtue of the Survival Act of the Commonwealth of Pennsylvania, 42 Pa. C.S.A. § 8302.

72.     Plaintiff asserts entitlement to all claims and damages as set forth in the Survival Act and supporting case law, including, but not limited to, the conscious pain and suffering undergone by the decedent as a result of the tortious conduct of all Defendants, up to and including his time of death.

WHEREFORE, Plaintiff respectfully demands damages against all Defendants, individually, jointly, and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) and in excess of local arbitration limits, exclusive of interest, prejudgment interest and costs.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Dated: April 29, 2021
_____

BY: _____
THOMAS R. KLINE, ESQUIRE
PA 28895
Tom.Kline@KlineSpecter.com
COLIN BURKE, ESQUIRE
PA 204924
Colin.Burke@KlineSpecter.com
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
(215) 772-1000
(215) 792-5523 Fax
*Attorneys for Plaintiff*

# EXHIBIT

# A

# SHORT CERTIFICATE
## Letters Of Administration

COMMONWEALTH OF PENNSYLVANIA

⎫
⎬  ss:
⎭

COUNTY OF **LUZERNE**

      I, **Joan Hoggarth**, Register of Wills in and for the County of Luzerne, in the

Commonwealth of Pennsylvania, DO HEREBY CERTIFY that on the **3rd** day of

**March, 2021 Letters Of Administration** in the Estate of **HERBERT M. LEE**,

deceased, were granted to **DORIS LEE**, Administratrix.  Having first been qualified well

and truly to administer the same.  And I further certify that no revocation of said Letters

appears of record in my office.

Date of Death:  **August 19, 2019**

File No.:  **4021-0466**

Social Security No.:  **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**

Given under my hand and seal of office this **3rd** day of **March, 2021.**



**NOT VALID WITHOUT SIGNATURE AND SEAL.**

# EXHIBIT

# B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| DORIS LEE, Administratrix of the<br>Estate of Herbert M. Lee, Deceased, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | |
| UNITED STATES OF AMERICA | : | |
| d/b/a WILKES-BARRE VETERANS | : | |
| ADMINISTRATION MEDICAL CENTER, | : | |
| UNITED STATES OF AMERICA | : | |
| d/b/a MANHATTAN VETERANS | : | |
| ADMINISTRATION MEDICAL CENTER, | : | |
| And MARTA CHAPLYNSKY – | : | |
| SAMUELSON, M.D., | : | |
| | : | |
| Defendants. | : | |

---

## CERTIFICATE OF MERIT AS TO DEFENDANT
## UNITED STATES OF AMERICA d/b/a WILKES-BARRE VETERANS
## ADMINISTRATION MEDICAL CENTER

I, Thomas R. Kline, Esquire, hereby certify that:

☒ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

☒ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

1

☒     The claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

☐     Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By:   */s/ Thomas R. Kline*  
       THOMAS R. KLINE, ESQUIRE  
       PA 28895  
       Tom.Kline@KlineSpecter.com  
       COLIN BURKE, ESQUIRE  
       PA 204924  
       Colin.Burke@KlineSpecter.com  
       1525 Locust Street, 19th Floor  
       Philadelphia, PA  19102  
       (215) 772-1000  
       (215) 792-5523 Fax  
       *Attorneys for Plaintiff*

DATED: April 29, 2021

2

# EXHIBIT

# C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DORIS LEE, Administratrix of the<br>Estate of Herbert M. Lee, Deceased, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | |
| UNITED STATES OF AMERICA<br>d/b/a WILKES-BARRE VETERANS<br>ADMINISTRATION MEDICAL CENTER,<br>UNITED STATES OF AMERICA<br>d/b/a MANHATTAN VETERANS<br>ADMINISTRATION MEDICAL CENTER,<br>and MARTA CHAPLYNSKY –<br>SAMUELSON, M.D., | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF MERIT AS TO DEFENDANT
## UNITED STATES OF AMERICA d/b/a MANHATTAN VETERANS
## ADMINISTRATION MEDICAL CENTER

I, Thomas R. Kline, Esquire, hereby certify that:

☒ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

☒ An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

1

☒ The claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

☐ Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By:  */s/ Thomas R. Kline*

THOMAS R. KLINE, ESQUIRE
PA 28895
Tom.Kline@KlineSpecter.com
COLIN BURKE, ESQUIRE
PA 204924
Colin.Burke@KlineSpecter.com
1525 Locust Street, 19th Floor
Philadelphia, PA  19102
(215) 772-1000
(215) 792-5523 Fax
*Attorneys for Plaintiff*

DATED: April 29, 2021

# EXHIBIT

# D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| DORIS LEE, Administratrix of the | : | |
| Estate of Herbert M. Lee, Deceased, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | |
| UNITED STATES OF AMERICA | : | |
| d/b/a WILKES-BARRE VETERANS | : | |
| ADMINISTRATION MEDICAL CENTER, | : | |
| UNITED STATES OF AMERICA | : | |
| d/b/a MANHATTAN VETERANS | : | |
| ADMINISTRATION MEDICAL CENTER, | : | |
| and MARTA CHAPLYNSKY – | : | |
| SAMUELSON, M.D., | : | |
| | : | |
| Defendants. | : | |

---

## CERTIFICATE OF MERIT AS TO DEFENDANT
## MARTA CHAPLYNSKY-SAMUELSON, M.D.

I, Thomas R. Kline, Esquire, hereby certify that:

☒    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

☒    An appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by other licensed professionals for whom this defendant is responsible in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

1

☒       The claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

☐       Expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this defendant.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By:   */s/ Thomas R. Kline*
       THOMAS R. KLINE, ESQUIRE
       PA 28895
       Tom.Kline@KlineSpecter.com
       COLIN BURKE, ESQUIRE
       PA 204924
       Colin.Burke@KlineSpecter.com
       1525 Locust Street, 19th Floor
       Philadelphia, PA  19102
       (215) 772-1000
       (215) 792-5523 Fax
       *Attorneys for Plaintiff*

DATED: April 29, 2021

2